## S90A0105. STRAUS v. STRAUS.
### (393 SE2d 248)

HUNT, Justice.

This appeal stems from our grant of an application for discretionary appeal that the appellant-former wife filed pursuant to OCGA § 5-6-35. The appeal raises two issues. The first is whether a party seeking to appeal an interlocutory order in a divorce case must follow the interlocutory-application procedure of OCGA § 5-6-34 (b) or the discretionary-application procedure of OCGA § 5-6-35. We conclude that § 5-6-35 controls. The second issue concerns whether the trial court erred in denying appellant's motion to dismiss the appellee-former husband's complaint for lack of personal jurisdiction. We conclude the trial court did not err.

1. The trial court denied the wife's motion to dismiss on July 20, 1989. On the following day, a certificate of immediate review pursuant to the statutory interlocutory-application procedure, OCGA § 5-6-34 (b), was filed. On August 19 the wife filed a discretionary application with this Court pursuant to OCGA § 5-6-35 (a) (2). The husband has moved to dismiss the appeal, on the ground that the wife failed to meet the time requirements of OCGA § 5-6-34· (b). We deny the motion to dismiss the appeal.

The application was untimely if the wife should have followed the interlocutory-application procedure, but was timely if the discretionary-application procedure was the correct route. OCGA § 5-6-34 (b) requires an applicant who is seeking to appeal pursuant to that subsection to file an application with the appropriate appellate court within ten days after the trial court has granted a certificate of immediate review. In contrast, OCGA § 5-6-35 (d) provides applicants who are seeking to appeal pursuant to OCGA § 5-6-35 within thirty days after the entry of the order, decision, or judgment complained of.

In *C & S Nat. Bank v. Rayle*, 246 Ga. 727, 730 (273 SE2d 139) (1980), we held that § 5-6-35 applies to all appeals specified therein, "whether the judgment be final, interlocutory, or summary." Applying the *Rayle* holding to the facts of this case, we conclude that the appellant was correct in following the discretionary-application procedure, and that her application, which was filed within the thirty-day period of § 5-6-35 (d), was timely. The certificate of immediate review was surplusage, and appellant's efforts to obtain it did not preclude her from directing her subsequent efforts to the discretionary-applica-

tion procedure.

2. Both parties to this appeal were residents of Cobb County at the time of their 1986 divorce. In 1987 the wife moved to Colorado. In 1989 she filed a motion in Cobb County for contempt against appellee. Shortly thereafter, the husband, who had remained in Cobb County, filed a complaint in Cobb Superior Court seeking to modify his obligation to pay child support and alimony. The husband claimed the court had personal jurisdiction over the wife by virtue of the domestic relations long-arm statute, OCGA § 9-10-91 (5). The wife moved to dismiss the complaint for lack of personal jurisdiction, relying principally on this Court's opinion in *Medeiros v. Tarpley*, 258 Ga. 372 (369 SE2d 482) (1988), and the trial court denied her motion.

(a) To satisfy the requirements of due process, a non-resident defendant must have minimum contacts with Georgia before he can be brought into our courts pursuant to the Georgia domestic relations long-arm statute, OCGA § 9-10-91 (5). In *Smith v. Smith*, 254 Ga. 450, 452 (3) (330 SE2d 706) (1985), we rejected a constitutional challenge to the foregoing statute and noted that, to satisfy due process, the requirements of *Intl. Shoe Co. v. Washington*, 326 U. S. 310, 316 (66 SC 154, 90 LE 95) (1945) must be met as to each defendant over whom a state court exercises jurisdiction.

> [D]ue process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

Id. at 316. In *Smith v. Smith*, supra, we set forth the rules to be followed, and recognized that each case must be considered on its own facts, in determining whether the courts of this state can exercise jurisdiction over a non-resident.[1] *Smith v. Smith*, supra at 453.

A review of the record shows the following. The husband and wife maintained a matrimonial domicile in Georgia "in which [the wife] incurred certain rights and obligations." Id. The parties had a

---

[1] The rules are:

"(1) The nonresident must purposefully avail himself of the privilege of doing some act or consummating some transaction with or in the forum . . .; (2) The plaintiff must have a legal cause of action against the nonresident, which arises out of, or results from, the activity or activities of the defendant within the forum and (3) If (and only if) the requirements of Rules 1 and 2 are established, a 'minimum contact' between the nonresident and the forum exists; the assumption of jurisdiction must be found to be consonant with the due process notions of 'fair play' and 'substantial justice.' In other words, the exercise of jurisdiction based upon the 'minimum contact' must be 'reasonable.'" [Cit.]

child in Georgia. The wife

> purposefully availed [herself] of the privilege of using the Georgia courts in dissolving [her] marriage. As a result, [she] was granted certain rights and obligations under both the laws of this state and the final judgment. [She] continued to reside within the state for [a year] after the dissolution of her marriage,

id., and had been residing outside the state for only two years at the time the husband filed this action for modification. Also, the wife used the Georgia courts to bring an action against the husband for contempt of the Georgia divorce decree.[2]

As in *Smith v. Smith*, supra, (where the parties were divorced in 1982, the husband moved to Colorado in 1983, and the wife's suit for contempt and modification was filed soon thereafter) we find the wife's connection with the state sufficient so that her being subjected to the jurisdiction of the Georgia courts does not offend " 'traditional notions of fair play and substantial justice.' " *Intl. Shoe Co. v. Washington*, supra at 326 U. S. 316. The wife could " 'reasonably anticipate being haled into court' " in Georgia. *Smith v. Smith*, supra at 454. Compare *Marbury v. Marbury*, 256 Ga. 651 (352 SE2d 564) (1987), where the husband and his family had left the state fourteen years before the wife sued the husband for divorce here in Georgia, and *Popple v. Popple*, 257 Ga. 98 (355 SE2d 657) (1987), where the parties lived in Georgia but were divorced in Arkansas, and the husband had not resided in Georgia for twenty years. For the foregoing reasons, we agree with the trial court that exercise of jurisdiction over the wife in this case comports with due process notions of "fair play and substantial justice." *Intl. Shoe Co. v. Washington*, supra at 326 U. S. 316.

(b) The wife argues that *Medeiros v. Tarpley*, 258 Ga., supra, and *Boyce v. Boyce*, 259 Ga. 831 (388 SE2d 524) (1990) hold that compliance by a non-resident with a Georgia divorce decree insulates the non-resident from subjection to jurisdiction in a Georgia court. To the extent those cases so hold, they are overruled and we reaffirm that jurisdiction under the domestic relations long-arm statute, OCGA § 9-10-91 (5), is to be determined by the terms of that statute and by the precepts of *Intl. Shoe Co. v. Washington*, supra.

*Judgment affirmed. Motion to dismiss the appeal denied. All*

---

[2] We do not mean to suggest that the filing of a contempt action to enforce the payment of alimony and child support under a divorce decree in the only court in which those provisions of the decree can be enforced would, by itself, constitute a sufficient connection with our state for the exercise of long-arm jurisdiction.

*the Justices concur, except Weltner and Bell, JJ., who dissent.*

WELTNER, Justice, dissenting.

The rule of *Medeiros v. Tarpley,* 258 Ga. 372 (369 SE2d 482) (1988) is based upon "due process notions of fair play and substantial justice." Id. at 373. It was reaffirmed in *Boyce v. Boyce,* 259 Ga. 831 (388 SE2d 524) (1990), less than five months ago.

It is a good rule, and should not be abandoned.

I am authorized to state that Justice Bell joins in this dissent.

DECIDED JULY 12, 1990.

*Donald A. Weissman, Douglas H. Pike,* for appellant.
*Matt Shade,* for appellee.