A00A0992. IN THE INTEREST OF S. S. et al., children.
(540 SE2d 238)

PHIPPS, Judge.

The mother of Sh. S., T. S., and St. S. and the father of Sh. S. and T. S.[1] appeal the termination of their parental rights. The mother asserts that the juvenile court improperly terminated her parental rights because she was not served personally with a copy of the petition for termination of parental rights or the summons indicating the date of the hearing. We agree and reverse the termination of her parental rights. Because the father of Sh. S. and T. S. has failed to present any error for our review, we affirm the termination of his parental rights.

In the third deprivation action filed on behalf of these children, Sh. S., T. S., and St. S. were placed in the custody of the Gwinnett County Department of Family & Children Services (DFACS) based on the juvenile court's determination that they were deprived. At that time, the children lived with their mother and her elderly and infirm parents in unsanitary and unsafe conditions. The mother has alcohol and substance abuse problems and had been unable to maintain stable employment or housing. The causes for all three deprivation actions have been the same — instability, substance abuse, and neglect.

On May 14, 1998, the juvenile court ordered the mother to obtain and maintain stable employment and living arrangements; undergo alcohol and drug evaluation, treatment, and random screening; undergo individual and family counseling; pay child support; maintain a clean, orderly, sanitary and suitable home; and visit regularly with the children. Although she paid some child support, the mother failed to comply with any other aspect of the court's order. In addition, the oldest child's therapist said that the child felt extreme anxiety about reunification with her mother unless she satisfactorily addressed her alcohol problem and that the child's psychological, mental, and moral welfare was being compromised due to her mother's intransigence.

Based on the mother's complete failure to improve her situation after three years and three deprivation actions, the juvenile court granted DFACS's motion to suspend reunification efforts and extended DFACS's temporary custody of the children. At the November 12, 1998 hearing on that motion, at which the mother was present, DFACS indicated its desire to pursue termination of parental rights.

On May 20, 1999, DFACS filed a petition for termination of

---

[1] St. S.'s natural father is unknown and unidentified. He was notified of the proceedings through service by publication.

parental rights. A summons was issued for the mother on May 28, 1999, to notify her that the petition had been filed and of a hearing for the purposes of terminating her parental rights. There is no indication in the record as to when, how, or whether the mother was served with the summons or the petition.

On October 11, 1999, the juvenile court conducted a hearing on the termination petition. Prior to the hearing, counsel for DFACS represented to the court that service had been perfected on the parents. The parents' attorney stated that his clients, although not present, "were notified through the mail by the Department." He also stated that he had not been able to locate them by mail or telephone.

DFACS presented one witness at the hearing — the DFACS caseworker assigned to the children.[2] He testified that he sought to have the mother served at her last known address, as set forth in the petition. He also testified that although the father had notified DFACS that the mother was living with him at a different address, no one had attempted to confirm whether she was actually there. Immediately after DFACS presented its case, the parents' attorney presented closing argument in which he stated that he did not believe the mother had received notice of the hearing and requested that the court defer termination until the mother received actual notice of the proceedings. The court nevertheless granted the termination petition, finding that the children were deprived, that they would continue to be deprived, and that it would be in their best interests to terminate the mother's and fathers' parental rights.

1. Pursuant to OCGA § 15-11-83 (c),[3] a summons, with the petition for the termination of parental rights attached, must be served at least 30 days before the time set for the hearing in the manner provided for in OCGA § 9-11-4. Personal service of the petition in a termination action is not only required by statute, but also is constitutionally required.[4]

Applying these legal principles to the record before us, we find that service of process on the mother was insufficient. There is no evidence that the mother was served personally with the summons and petition or by leaving a copy at her dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.[5] The fact that she may have had actual notice of the termination proceeding would not cure the defective service.[6]

---

[2] DFACS also presented a letter from Sh. S. and made her available for cross-examination, but she never took the witness stand.

[3] OCGA § 15-11-83 was redesignated as OCGA § 15-11-96, effective July 1, 2000.

[4] *In the Interest of C. I. W.*, 229 Ga. App. 481, 484 (2) (494 SE2d 291) (1997).

[5] OCGA § 9-11-4 (e) (7).

[6] *In the Interest of D. R. W.*, 229 Ga. App. 571, 574 (1) (494 SE2d 379) (1997).

Relying on *In the Interest of D. R. W.*,[7] DFACS argues that any defects in service of process were waived. We disagree.

In that case, the attorney for D. R. W.'s mother never raised the issue of insufficiency of service of process at the termination hearing. Also D. R. W.'s mother had failed to appear for two prior hearings, giving the attorney a good faith basis to raise the issue of service at those hearings.[8]

Here, the mother's attorney did raise the issue of insufficiency of service of process at the hearing. In addition, the mother attended at least four hearings prior to the hearing on the termination petition. Her attorney therefore had no prior opportunity to raise the issue.

In termination of parental rights cases, because of their sensitive nature and the infringement on fundamental liberties they entail, we recognize that we must be vigilant to protect the parties' rights and interests by observing all formalities required by law, including proper service of process. We therefore refuse to establish inflexible rules designed to make waiver more likely but instead choose to evaluate each individual case on its particular facts to determine if a waiver has occurred.

As was the case in *D. R. W.*, the mother's attorney could have reviewed the clerk's file before the hearing to determine if service had been perfected. But such a review should not be required to ensure that the defense of insufficiency of service of process is not waived unless sufficient reason to doubt proper service exists prior to the hearing. The only evidence that could arguably create such doubt is the fact that the mother's attorney had some difficulty contacting his clients prior to the hearing. But he also stated that he knew that his clients had received notice of the proceedings in the mail from DFACS and presumably thought that they had also been personally served with the petition.

We recognize that the mother's attorney did not raise any objection to service until the end of the hearing, but find that it was timely under the circumstances. At the start of the hearing, the DFACS attorney represented to the court that service had been perfected on the parents. The DFACS attorney then presented his first witness — the DFACS caseworker. It became apparent during the caseworker's testimony that there were issues regarding proper service. No other witnesses testified at the hearing. After the caseworker's testimony, during closing argument, the mother's attorney placed his objection on the record. Under the circumstances, his objection was made at the first practicable opportunity, thereby precluding waiver of the

---

[7] Id. at 574 (2).

[8] Id.

issue.[9]

Despite our firm belief that the juvenile court's action was taken in the best interests of the children, because we find that the required personal service was not made or waived, we must reverse the judgment of the juvenile court terminating the mother's parental rights.[10]

2. The father has not presented any error for our review. We therefore affirm the juvenile court's termination of his parental rights.

*Judgment affirmed in part and reversed in part. Johnson, C. J., and Smith, P. J., concur.*

DECIDED OCTOBER 4, 2000.

*Rodney S. Harris*, for appellants.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen S. Nelson, Assistant Attorney General, Cheeley & Joyner, John P. Cheeley*, for appellee.

---

[9] See id.

[10] See *In the Interest of C. I. W.*, supra.